# COMPOSITE EXHIBIT "A"

   

- Search
- Help

**Back**

New Search   Expand All

| Case Number | Filed Date | Case Type | Status | Contested | Jury Trial |
|---|---|---|---|---|---|
| 422026CA000918CA/ [26CA000918AX] | 04/20/2026 | Circuit Civil 3-C | OPEN | NO | YES |

| Filing Date | Description | Active | Contested | Judgment Date |
|---|---|---|---|---|
| 04/20/2026 | OTHER CIVIL-DISCRIMINATION-EMPLOYMENT OR OTHER | YES | NO | - |

| Party Name | Party Type | Attorney | Bar ID |
|---|---|---|---|
| YOUMANS, STACY MORRIS | JUDGE | | |
| DOE, JANE   Search This Party | PLAINTIFF | YODA, NICOLAS ABDEL | 1015597 |
| ENSEMBLE RCM, LLC   Search This Party | DEFENDANT | | |

**Dockets** ☐

| Image | Doc # | Action Date | Description | Pages |
|---|---|---|---|---|
| 📄 | 10 | 04/22/2026 | ORDER DIFFERENTIATED CIVIL CASE MANAGEMENT ORDER AND ORDER ESTABLISHING MOTION PRACTICE PROCEDURES | 6 |
| | 4 | 04/21/2026 | Payment received: $400.00 Receipt Number XX 1186454 | |
| | 2 | 04/21/2026 | Judge: Assigned | |
| 📄 | 9 | 04/20/2026 | NOTICE OF FILING | 1 |
| 📄 | 8 | 04/20/2026 | MOTION-MOTION FOR LEAVE TO PROCEED UNDER PSEUDONYM | 6 |
| 📄 | 7 | 04/20/2026 | PETITION/COMPLAINT | 22 |
| 📄 | 6 | 04/20/2026 | CIVIL COVER SHEET | 3 |
| | 5 | 04/20/2026 | Filer Selected Confidentiality Flag: NoticeOfConfidentiality | |
| | 3 | 04/20/2026 | Assessment 1 assessed at sum $400.00 | |
| | 1 | 04/20/2026 | Case 422026CA000918CAAXMX Filed with Clerk on 4/20/2026 | |

**Judge Assignment History** ☐

| Assigned Date | Withdraw Date | Judicial Officer | Type |
|---|---|---|---|
| 04/21/2026 | - | YOUMANS, STACY M | |

**Court Events** ☐

**Financial Summary** ☐

**Reopen History** ☐

** Pursuant to Florida Statutes and Florida Rules of Court Procedure, records that have been designated as expunged, sealed or confidential may not be available through this service. For additional information on specific records please contact the Clerk of Court.

Accessibility Policy

Case 5:26-cv-00431    Document 1-1    Filed 06/12/26    Page 3 of 40 PageID 7

**FORM 1.997.    CIVIL COVER SHEET**

The civil cover sheet and the information contained in it neither replace nor supplement the filing and service of pleadings or other documents as required by law. This form must be filed by the plaintiff or petitioner with the Clerk of Court for the purpose of reporting uniform data pursuant to section 25.075, Florida Statutes. (See instructions for completion.)

**I.    CASE STYLE**

IN THE CIRCUIT/COUNTY COURT OF THE <u>FIFTH</u>  JUDICIAL CIRCUIT,
IN AND FOR <u>MARION</u>  COUNTY, FLORIDA

<u>Jane Doe</u>
Plaintiff                                                     Case # _____
                                                                  Judge   _____

vs.
<u>Ensemble RCM, LLC</u>
 Defendant

**II.    AMOUNT OF CLAIM**

Please indicate the estimated amount of the claim, rounded to the nearest dollar. The estimated amount of the claim is requested for data collection and clerical processing purposes only. The amount of the claim shall not be used for any other purpose.

☐  $8,000 or less
☐  $8,001 - $30,000
☐ $30,001- $50,000
☐ $50,001- $75,000
☐ $75,001 - $100,000
☒ over $100,000.00

**III.    TYPE OF CASE**      (If the case fits more than one type of case,   select the most definitive category.) If the most descriptive label is a subcategory (is indented under a broader category), place an x on both the main category and subcategory lines.

- 1 -

- 2 -

**CIRCUIT CIVIL**

☐ Condominium
☐ Contracts and indebtedness
☐ Eminent domain
☐ Auto negligence
☐ Negligence—other
      ☐ Business governance
      ☐ Business torts
      ☐ Environmental/Toxic tort
      ☐ Third party indemnification
      ☐ Construction defect
      ☐ Mass tort
      ☐ Negligent security
      ☐ Nursing home negligence
      ☐ Premises liability—commercial
      ☐ Premises liability—residential
☐ Products liability
☐ Real Property/Mortgage foreclosure
      ☐ Commercial foreclosure
      ☐ Homestead residential foreclosure
      ☐ Non-homestead residential foreclosure
      ☐ Other real property actions

☐ Professional malpractice
      ☐ Malpractice—business
      ☐ Malpractice—medical
      ☐ Malpractice—other professional
☒ Other
      ☐ Antitrust/Trade regulation
      ☐ Business transactions
      ☐ Constitutional challenge—statute or ordinance
      ☐ Constitutional challenge—proposed amendment
      ☐ Corporate trusts
      ☒ Discrimination—employment or other
      ☐ Insurance claims
      ☐ Intellectual property
      ☐ Libel/Slander
      ☐ Shareholder derivative action
      ☐ Securities litigation
      ☐ Trade secrets
      ☐ Trust litigation

**COUNTY CIVIL**

☐ Small Claims up to $8,000
☐ Civil
☐ Real property/Mortgage foreclosure

- 2 -

☐ Replevins
☐ Evictions
    ☐ Residential Evictions
    ☐ Non-residential Evictions
☐ Other civil (non-monetary)

**COMPLEX BUSINESS COURT**

This action is appropriate for assignment to Complex Business Court as delineated and mandated by the Administrative Order.  Yes ☐ No ☒

    **IV.    REMEDIES SOUGHT** (check all that apply):
☒ Monetary;
☒ Nonmonetary declaratory or injunctive relief;
☒ Punitive

    **V.    NUMBER OF CAUSES OF ACTION:** [  ]
(Specify)

    9

    **VI.    IS THIS CASE A CLASS ACTION LAWSUIT?**
        ☐ yes
        ☒ no

    **VII.    HAS NOTICE OF ANY KNOWN RELATED CASE BEEN FILED?**
        ☒ no
        ☐ yes If "yes," list all related cases by name, case number, and court.

    **VIII.    IS JURY TRIAL DEMANDED IN COMPLAINT?**
        ☒ yes
        ☐ no

    **IX.    DOES THIS CASE INVOLVE ALLEGATIONS OF SEXUAL ABUSE?**
        ☐ yes
        ☒ no

I CERTIFY that the information I have provided in this cover sheet is accurate to the best of my knowledge and belief, and that I have read and will comply with the requirements of Florida Rule of Judicial Administration 2.425.

Signature: s/ Nicolas Abdel Yoda        Fla. Bar # 1015597
        Attorney or party        (Bar # if attorney)

Nicolas Abdel Yoda        04/20/2026
  (type or print name)        Date

- 3 -

IN THE CIRCUIT COURT OF THE FIFTH JUDICIAL CIRCUIT
IN AND FOR MARION COUNTY, FLORIDA

JANE DOE,

                                                 CASE NO.:

           Plaintiff,

v.

ENSEMBLE RCM LLC, d/b/a
ENSEMBLE HEALTH PARTNERS,

           Defendant.

_____/

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, JANE DOE (hereinafter referred to as "Plaintiff"), by and through her undersigned counsel, hereby files this lawsuit against Defendant, ENSEMBLE RCM LLC d/b/a ENSEMBLE HEALTH PARTNERS (hereinafter referred to as "Defendant" or "Ensemble"), and alleges as follows:

**INTRODUCTION**

1. This is an action for race discrimination, retaliation, hostile work environment, and constructive discharge arising from Plaintiff's employment with Defendant Ensemble RCM, LLC, d/b/a Ensemble Health Partners ("Ensemble"). Ensemble hired Plaintiff, an African American woman, in February 2023 as an Accounts Receivable Manager. Over the course of more than two years, Ensemble systematically denied Plaintiff the training, staffing authority, advancement opportunities, and operational support that it freely provided to her white counterpart in the same role, under the same supervisor, in the same department. When Plaintiff reported this treatment to Human Resources and senior leadership, Ensemble did not remedy the discrimination. Instead, the retaliation escalated. Senior leaders intimidated Plaintiff, stripped her of managerial authority,

burdened her with additional workload, and ultimately passed her over for a Director promotion in favor of a less-qualified white external candidate.

2.      The workplace stress caused by this sustained mistreatment resulted in Plaintiff's hospitalization for a serious cardiac condition requiring surgical intervention. When Plaintiff returned from medical leave, she found that no one had maintained her work and that management immediately pressured her to catch up. Having exhausted every internal avenue for relief and facing conditions no reasonable employee could be expected to endure, Plaintiff resigned. This action seeks to hold Ensemble accountable for its unlawful conduct.

## PARTIES

3.      Plaintiff is an African American female who resides in the State of Florida and proceeds in this action under a pseudonym to protect her safety. Plaintiff is a certified participant in the Florida Address Confidentiality Program pursuant to Florida Statutes §§ 741.401–741.465. Plaintiff's substitute mailing address, designated by the Florida Attorney General, is 723 Truman Avenue, Tallahassee, Florida 32314. Plaintiff's true identity is known to undersigned counsel and will be disclosed to Defendant's counsel pursuant to the protective order sought concurrently herewith. A Motion for Leave to Proceed Under Pseudonym is filed simultaneously with this Complaint.

4.      Defendant Ensemble RCM, LLC, d/b/a Ensemble Health Partners, is a limited liability company organized under the laws of the State of Delaware, registered to do business in the State of Florida as a foreign limited liability company, with its principal place of business at 11511 Reed Hartman Highway, Cincinnati, Ohio 45241. Defendant's registered agent for service of process in the State of Florida is CT Corporation System, 1200 South Pine Island Road, Plantation, Florida 33324. At all times material hereto, Defendant was an "employer" within the

2

meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e(b), the Family and Medical Leave Act, 29 U.S.C. § 2611(4), and the Florida Civil Rights Act, Florida Statutes § 760.02(7). Defendant employs in excess of 10,000 employees and conducts business throughout the State of Florida, including employing remote workers in Florida.

## JURISDICTION AND VENUE

5.    This Court has subject matter jurisdiction over Plaintiff's federal claims pursuant to the concurrent jurisdiction afforded to state courts over claims arising under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., 42 U.S.C. § 1981, and the Family and Medical Leave Act, 29 U.S.C. § 2601 et seq. This Court has original jurisdiction over Plaintiff's claims under the Florida Civil Rights Act, Florida Statutes § 760.01 et seq.

6.    Venue is proper in Marion County pursuant to Florida Statutes § 47.051.

## ADMINISTRATIVE PREREQUISITES

7.    Plaintiff has complied with all statutory prerequisites in order to file this action.

8.    Plaintiff timely filed a Charge of Discrimination against Defendant with the U.S. Equal Employment Opportunity Commission ("EEOC") and the Florida Commission on Human Relations ("FCHR").

9.    The EEOC issued Plaintiff's Notice of Right to Sue against Defendant.

10.    Plaintiff is timely commencing this action within ninety (90) days of receipt of her EEOC Notice of Right to Sue.

## FACTUAL ALLEGATIONS

11.    On or about February 21, 2023, Defendant hired Plaintiff as a Manager of Accounts Receivable. Plaintiff worked remotely from the State of Florida.

12.     At all times relevant hereto, Plaintiff is an African American female with extensive experience in healthcare revenue cycle management. Plaintiff holds a Master's degree and CRCR certification.

13.     Plaintiff's initial direct supervisor was Kristen Smith, Director. Above Kristen Smith was Ardenia Kane, Senior Director. Both are white.

14.      Beginning in approximately March 2023, Ardenia Kane interfered with and disrupted Plaintiff's training, including assigning Plaintiff a project with explicit instructions to complete it entirely alone without any assistance or guidance. Defendant did not subject similarly situated white employees to this treatment.

15.     In approximately April 2023, following the passing of Plaintiff's father, Plaintiff's supervisor Kristen Smith approved Plaintiff's request to leave work early to visit his gravesite. Ardenia Kane overrode this approval, telling Plaintiff she could not leave until her adjustments were completed, and called a meeting fifteen minutes before Plaintiff's scheduled departure. White members of the leadership team routinely left early for personal reasons, including dance recitals, volleyball, and golf lessons, without similar restrictions.

16.     In approximately June or July 2023, Plaintiff reported to Human Resources representative Marie Eberle that she was experiencing workplace harassment from Ardenia Kane, including contradictory instructions between her direct supervisor and Ardenia Kane and public belittling in front of Plaintiff's team. Vice President Michael Bartlett was present during this report.

17.     Despite these obstacles, Plaintiff received a strong 90-day performance review from her supervisor, Kristen Smith. Plaintiff routinely worked eleven to twelve-hour days, frequently without breaks.

4

18.    At all times relevant hereto, Plaintiff's primary comparator was Travis Cordell, a white male who held the identical title of Accounts Receivable Manager and reported to the same supervisor. Ensemble promoted Travis Cordell from Supervisor to Manager in approximately six months, bypassing Defendant's own standard operating procedure timelines.

19.    Beginning in approximately mid-2024, when Director Wesley White (white) became Plaintiff's direct supervisor following Kristen Smith's transfer, Plaintiff experienced pervasive and systematic differential treatment compared to Travis Cordell, including but not limited to the following:

a.    Wesley White denied Plaintiff access to training opportunities, including PowerBI and Directors-and-Above reporting, that he provided to Travis Cordell;

b.    Wesley White required Plaintiff to seek his permission before communicating with leaders on Travis Cordell's team, while Travis Cordell communicated directly with Plaintiff's team members without any such restriction;

c.    Wesley White denied Plaintiff the ability to hire or backfill positions on her team, while permitting Travis Cordell to hire both internally and externally and to grow his team to twenty employees;

d.    Wesley White denied Plaintiff access to training from subject matter experts that he made available to white employees on Plaintiff's team;

e.    During high-level client meetings, including Sentara Side-by-Side meetings, Wesley White provided significant support to Travis Cordell, including assisting him in presenting, while leaving Plaintiff to present alone without any guidance or preparation despite her repeated requests.

20.     Wesley White also undermined Plaintiff's managerial authority in ways unrelated to the Travis Cordell comparison. Wesley White invited Plaintiff's white subordinate, Stacy H., to a Managers-and-Above meeting without Plaintiff's knowledge or authorization. Wesley White instructed Plaintiff to change her subordinate Stacy H.'s performance evaluation from "Not Meeting Expectations" to "Meeting Some Expectations" despite extensive Workday documentation supporting Plaintiff's original assessment.

21.     Wesley White transferred an underperforming employee to Plaintiff's team, describing the individual as a "superstar," despite having previously told Plaintiff her team was overstaffed. The employee had no relevant experience.

22.     Wesley White warned Plaintiff that she was "not allowed to drop one ball" or make any mistakes.

23.     Between approximately June 2023 and March 2025, Plaintiff made multiple complaints of race discrimination and differential treatment to Human Resources, including to Marie Eberle, Paige Veta, and Payton Miller, and to senior leadership, including AVP Stephanie Daniels, SVP Tanya Robbins, and Senior Director Bonnie Roberds.

24.     Plaintiff's complaints specifically identified that she believed she was being subjected to prejudicial treatment based on her race compared to her white counterpart, Travis Cordell.

25.     Despite Plaintiff's repeated complaints, Defendant failed to take meaningful corrective action. The discriminatory and retaliatory conduct continued and escalated after each complaint.

26.     Upon information and belief, Senior Director Bonnie Roberds asked a fellow African American employee in writing whether Travis Cordell and Wesley White "were racist."

The employee responded in detail describing differential treatment of white employees over minorities. Bonnie Roberds did not respond and took no corrective action. Defendant was thus on notice that its supervisors were engaging in racially discriminatory conduct affecting Plaintiff and other Black employees, yet Defendant failed to act.

27.     Beginning in approximately July 2024, Plaintiff applied for at least four internal positions, including Director and Manager roles. Defendant granted Plaintiff only one interview and did not select her for any position.

28.     Wesley White acknowledged to Plaintiff that she was already performing many Director-level duties.

29.     In approximately May 2025, Ensemble promoted Wesley White to Director II, Operational Assessment, creating a vacancy for the Director of Accounts Receivable position. Plaintiff applied for the position.

30.     On or about June 17, 2025, Bonnie Roberds, AVP Heather Neill, and a third individual interviewed Plaintiff for the Director position. During the interview, neither Bonnie Roberds nor Heather Neill discussed the responsibilities or expectations of the Director role. Instead, they used the interview to question Plaintiff about concerns she had previously raised with Human Resources and senior leadership.

31.     In or about July 2025, Defendant hired Jessica Burton, a white female and external candidate, for the Director of Accounts Receivable position. Ms. Burton held the same title as Plaintiff (Manager) at her prior employer, and unlike Plaintiff, had no prior experience working with Defendant's client or systems. Plaintiff, by contrast, had been performing Director-level duties for Defendant for over two years and had received acknowledgment from her supervisor that she was already functioning at that level.

32.    In or about January 2024, Plaintiff terminated a subordinate employee, Shane Neaves, a white male, for performance-related reasons including insubordination and failure to complete assigned duties.

33.    In or about December 2025, Plaintiff learned that Ensemble had rehired Shane Neaves under Travis Cordell, with a start date of January 27, 2026. Upon information and belief, Mr. Neaves intentionally performed poorly on his interview because he knew Ensemble would hire him regardless.

34.    On or about April 8, 2025, Plaintiff experienced severe cardiac tachycardia while at work as a result of workplace stress. Plaintiff called an ambulance. Emergency personnel transported her to the hospital and admitted her near the Intensive Care Unit. Plaintiff subsequently underwent a cardiac ablation procedure.

35.    Plaintiff took leave under the Family and Medical Leave Act. Upon Plaintiff's return from FMLA leave in approximately late April 2025, Plaintiff discovered that Defendant had left her work undone during her absence, including failing to update required reports. Wesley White instructed Plaintiff to update these reports immediately.

36.    The stress of returning to work under these conditions caused Plaintiff's physician to place her back on FMLA leave.

37.    On or about July 9, 2025, Plaintiff submitted her resignation, effective July 10, 2025. In her resignation letter, Plaintiff stated that she was resigning due to "persistent challenges and lack of support from my leaders," "opposition, biased treatment, and numerous barriers," and the failure to foster "a sense of belonging, personal growth, or equal opportunities compared to my counterpart, Travis Cordell."

38.     Plaintiff's resignation was not voluntary. The cumulative effect of Defendant's discriminatory and retaliatory conduct over more than two years (including training exclusion, authority undermining, public belittlement, forced alteration of performance evaluations, intimidation by senior leadership, denial of advancement despite performing Director-level duties, hospitalization caused by workplace stress, and the hiring of a less-qualified white external candidate over Plaintiff) created working conditions so intolerable that a reasonable person in Plaintiff's position would have felt compelled to resign.

39.     In or about December 2025, Plaintiff applied for Director and Manager positions at Ensemble. Despite her qualifications, prior experience, and history as an internal employee, Defendant denied Plaintiff all positions and did not offer her an interview for any role.

## COUNT I
## 42 U.S.C. § 2000e-2
### *Title VII Race Discrimination*

40.     Plaintiff reincorporates the factual allegations in Paragraphs 1 through 39 as if fully set forth herein.

41.      Title VII prohibits an employer from discriminating against any individual with respect to compensation, terms, conditions, or privileges of employment because of such individual's race. 42 U.S.C. § 2000e-2(a)(1).

42.     Plaintiff, an African American, is a member of a protected class.

43.     Plaintiff was qualified for her position and performed her job well. Plaintiff received a strong 90-day performance review, routinely worked eleven to twelve-hour days, and her own supervisor acknowledged that she was performing Director-level duties.

9

44.     Defendant treated Plaintiff less favorably than her similarly situated white comparator, Travis Cordell, who held the identical title, reported to the same supervisor, and worked in the same department.

45.     Specifically, Defendant denied Plaintiff access to training opportunities it provided to Travis Cordell, including PowerBI and Directors-and-Above reporting.

46.     Defendant required Plaintiff to seek permission before communicating with other leaders while imposing no such restriction on Travis Cordell.

47.     Defendant denied Plaintiff the ability to hire or backfill positions on her team while permitting Travis Cordell to hire freely and grow his team to twenty employees.

48.     During high-level client meetings, Defendant's Director provided significant support to Travis Cordell while leaving Plaintiff to present alone without guidance despite her repeated requests for preparation assistance.

49.     Defendant further discriminated against Plaintiff by undermining her managerial authority, including instructing her to change a subordinate's performance evaluation from "Not Meeting Expectations" to "Meeting Some Expectations" over Plaintiff's documented objections, denying Plaintiff the ability to place a chronically underperforming subordinate on a performance improvement plan, and transferring an underperforming employee onto Plaintiff's team under the guise that the employee was a "superstar."

50.     Defendant failed to promote Plaintiff despite her superior qualifications and years of performing Director-level duties. Plaintiff applied for at least four internal positions beginning in July 2024 and Defendant granted her only one interview.

51.     Defendant ultimately hired a less-qualified white external candidate for the Director of Accounts Receivable position (a candidate who held the same Manager title as Plaintiff and had

10

no experience with Defendant's client or systems) while Plaintiff had performed Director-level duties for over two years.

52.    Defendant's conduct forced Plaintiff into constructive discharge. The cumulative effect of Defendant's discriminatory actions over more than two years created working conditions so intolerable that no reasonable employee would have remained.

53.    Defendant's articulated reasons for its employment decisions were pretextual. The true reason for Defendant's adverse actions was Plaintiff's race.

54.    As a direct and proximate result of Defendant's unlawful discrimination, Plaintiff has suffered damages, including but not limited to lost wages, lost benefits, emotional distress, mental anguish, humiliation, loss of enjoyment of life, and physical harm including a cardiac condition requiring hospitalization and surgical intervention

**COUNT II**
**42 U.S.C. § 2000e-3(a)**
*Title VII Retaliation*

55.    Plaintiff reincorporates the factual allegations in Paragraphs 1 through 39 as if fully set forth herein.

56.    Title VII prohibits an employer from discriminating against any employee because she has opposed any practice made unlawful by Title VII or because she has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Title VII. 42 U.S.C. § 2000e-3(a).

57.    Plaintiff engaged in protected activity on multiple occasions. In approximately June or July 2023, Plaintiff reported race-based harassment to Human Resources representative Marie Eberle.

11

58.     In approximately July 2024, Plaintiff raised concerns about differential treatment with HR representative Paige Veta.

59.     In approximately fall 2024, Plaintiff complained to AVP Stephanie Daniels that she believed Wesley White was treating her with prejudice based on her race compared to her white counterpart.

60.     In approximately December 2024, Plaintiff escalated her complaints to SVP Tanya Robbins.

61.     In approximately March 2025, Plaintiff reported ongoing discriminatory treatment to HR representative Payton Miller and to Senior Director Bonnie Roberds.

62.     Following each instance of protected activity, Defendant took adverse employment actions against Plaintiff. After Plaintiff complained to Stephanie Daniels, the differential treatment between Plaintiff and Travis Cordell continued unabated.

63.     After Plaintiff complained to Tanya Robbins in December 2024, Wesley White added two senior leaders to a follow-up meeting in an attempt to intimidate Plaintiff, and Tanya Robbins instructed Plaintiff to change her subordinate's performance evaluation despite agreeing that managers should not be asked to do so.

64.     After Plaintiff's complaint resulted in the approval of a staffing transfer in February 2025, Wesley White immediately transferred an underperforming employee to Plaintiff's team and warned Plaintiff she was "not allowed to drop one ball." After Plaintiff raised concerns to Bonnie Roberds in March 2025, Roberds became defensive and told Plaintiff to "blame me."

65.     Defendant used Plaintiff's Director interview on June 17, 2025 to question Plaintiff about concerns she had previously raised with Human Resources and senior leadership, rather than

12

to evaluate her qualifications for the position. Defendant then hired a less-qualified white external candidate for the role.

66.    After Plaintiff resigned, Defendant continued to retaliate. When Plaintiff reapplied for Director and Manager positions in December 2025, Defendant denied her all positions without granting a single interview. Defendant also rehired Shane Neaves, a white male whom Plaintiff had previously terminated for cause, under Plaintiff's former counterpart Travis Cordell.

67.    The temporal proximity between Plaintiff's protected activities and the adverse actions, the escalating pattern of retaliation following each complaint, and Defendant's use of Plaintiff's own complaints as the basis for her Director interview demonstrate a clear causal connection between Plaintiff's protected activity and Defendant's adverse actions.

68.    As a direct and proximate result of Defendant's unlawful retaliation, Plaintiff has suffered damages, including but not limited to lost wages, lost benefits, emotional distress, mental anguish, humiliation, loss of enjoyment of life, and physical harm.

### COUNT III
### 42 U.S.C. § 2000e-2
### *Title VII Hostile Work Environment*

69.    Plaintiff reincorporates the factual allegations in Paragraphs 1 through 39 as if fully set forth herein.

70.    Defendant subjected Plaintiff to unwelcome conduct based on her race that was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment.

71.    The conduct Plaintiff experienced was unwelcome. Plaintiff repeatedly complained about the treatment to Human Resources and senior leadership, demonstrating that she did not welcome or invite it.

72.     The conduct was based on Plaintiff's race. Defendant's white comparator, Travis Cordell, did not experience similar treatment.

73.     Defendant provided Travis Cordell with training, staffing resources, meeting support, and communication freedom that it systematically denied to Plaintiff. Defendant's own Senior Director asked a fellow African American employee in writing whether Travis Cordell and Wesley White "were racist," confirming that the racial dimension of the conduct was recognized within Defendant's own leadership.

74.     The conduct was both severe and pervasive. Beginning in March 2023 and continuing through Plaintiff's resignation in July 2025, Defendant's supervisors and senior leaders: publicly belittled Plaintiff in front of her team; denied Plaintiff leave to visit her deceased father's gravesite while permitting white leaders to leave early for personal activities; assigned Plaintiff projects with instructions to complete them alone without guidance; excluded Plaintiff from training opportunities provided to white employees; denied Plaintiff the authority to hire, discipline, or evaluate her own subordinates; denied Plaintiff preparation assistance for high-level client meetings while actively supporting her white counterpart; transferred underperforming employees onto Plaintiff's team; warned Plaintiff she was "not allowed to drop one ball"; used a Director interview to interrogate Plaintiff about her prior discrimination complaints; and hired a less-qualified white external candidate for the Director position Plaintiff sought.

75.     The harassment altered the conditions of Plaintiff's employment. The workplace stress directly caused Plaintiff to experience severe cardiac tachycardia requiring emergency hospitalization and a cardiac ablation procedure. Plaintiff's physician placed her on FMLA leave a second time because the stress of returning to work under these conditions endangered her health.

14

76. Defendant knew of the hostile environment and failed to remedy it. Plaintiff made at least five formal complaints to Human Resources representatives Marie Eberle, Paige Veta, and Payton Miller, and to senior leaders Stephanie Daniels, Tanya Robbins, and Bonnie Roberds, between June 2023 and March 2025. Despite this notice, Defendant took no meaningful corrective action. The discriminatory conduct continued and escalated after each complaint.

77. As a direct and proximate result of Defendant's failure to prevent and remedy the hostile work environment, Plaintiff has suffered damages, including but not limited to lost wages, lost benefits, emotional distress, mental anguish, humiliation, loss of enjoyment of life, and physical harm including a cardiac condition requiring hospitalization and surgical intervention.

## COUNT IV
### 42 U.S.C. § 1981
*Race Discrimination*

78. Plaintiff reincorporates the factual allegations in Paragraphs 1 through 39 as if fully set forth herein.

79. Section 1981 provides that all persons shall have the same right to make and enforce contracts as is enjoyed by white citizens. 42 U.S.C. § 1981(a). The term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship. 42 U.S.C. § 1981(b).

80. Defendant intentionally discriminated against Plaintiff on the basis of her race in the performance, modification, and termination of her employment contract.

81. Defendant denied Plaintiff training, staffing authority, promotional opportunities, and operational support that it provided to her white counterpart in the same position.

15

82.    Defendant undermined Plaintiff's managerial authority by overriding her performance evaluations and staffing decisions.

83.    Defendant passed Plaintiff over for promotion in favor of a less-qualified white external candidate despite acknowledging that Plaintiff was already performing Director-level duties.

84.    Defendant's discriminatory conduct ultimately forced Plaintiff's constructive discharge.

85.    Defendant's discriminatory intent is demonstrated by the systematic and pervasive nature of the differential treatment, the sustained pattern of denying Plaintiff resources and opportunities afforded to her white counterpart, Defendant's failure to act despite its own leadership's written acknowledgment that the conduct may have been racially motivated, and the use of Plaintiff's discrimination complaints as the basis for her Director interview rather than evaluating her qualifications.

86.    As a direct and proximate result of Defendant's unlawful discrimination, Plaintiff has suffered damages, including but not limited to lost wages, lost benefits, emotional distress, mental anguish, humiliation, loss of enjoyment of life, and physical harm. Plaintiff seeks compensatory and punitive damages without limitation under § 1981.

**COUNT V**
**42 U.S.C. § 1981**
**Retaliation**

87.    Plaintiff reincorporates the factual allegations in Paragraphs 1 through 39 as if fully set forth herein.

88.    Section 1981 protects individuals who oppose racial discrimination from retaliation.

16

89.    Plaintiff engaged in protected activity by opposing Defendant's racially discriminatory practices through multiple internal complaints identifying race-based differential treatment between approximately June 2023 and March 2025, and by filing a Charge of Discrimination with the EEOC on January 13, 2026.

90.    Defendant retaliated against Plaintiff for opposing racial discrimination by escalating the discriminatory treatment after each complaint, intimidating Plaintiff through senior leadership, using Plaintiff's Director interview to interrogate her about her prior complaints, hiring a less-qualified white external candidate over Plaintiff for the Director position, and denying Plaintiff all positions without interview when she reapplied after her resignation. The retaliatory conduct contributed to Plaintiff's constructive discharge.

91.    As a direct and proximate result of Defendant's unlawful retaliation, Plaintiff has suffered damages, including but not limited to lost wages, lost benefits, emotional distress, mental anguish, humiliation, loss of enjoyment of life, and physical harm. Plaintiff seeks compensatory and punitive damages without limitation under § 1981.

### COUNT VI
### 29 U.S.C. § 2615(a)(1)
*FMLA Interference*

92.    Plaintiff reincorporates the factual allegations in Paragraphs 1 through 39 as if fully set forth herein.

93.    The FMLA makes it unlawful for an employer to interfere with, restrain, or deny the exercise of or the attempt to exercise any right provided under the FMLA. 29 U.S.C. § 2615(a)(1).

94.     Plaintiff was an eligible employee under the FMLA. Defendant employed more than fifty employees, Plaintiff had been employed by Defendant for more than twelve months, and Plaintiff had worked more than 1,250 hours during the twelve-month period preceding her leave.

95.     Plaintiff suffered from a serious health condition. On April 8, 2025, Plaintiff experienced severe cardiac tachycardia at work, requiring emergency hospitalization near the Intensive Care Unit and a cardiac ablation procedure.

96.     Plaintiff exercised her right to FMLA leave and Defendant approved the leave.

97.     Upon Plaintiff's return from FMLA leave, Defendant interfered with Plaintiff's right to reinstatement by failing to maintain Plaintiff's work during her absence, including failing to update required reports that Plaintiff was responsible for.

98.     Wesley White immediately demanded that Plaintiff complete all outstanding work, creating conditions so stressful that Plaintiff's physician placed her back on FMLA leave.

99.     Defendant's failure to maintain Plaintiff's duties during her absence and its demand for immediate completion upon return effectively penalized Plaintiff for exercising her FMLA rights and interfered with her right to return to equivalent working conditions.

100.    As a direct and proximate result of Defendant's unlawful interference with Plaintiff's FMLA rights, Plaintiff has suffered damages, including but not limited to lost wages, lost benefits, emotional distress, and physical harm.

**COUNT VII**
**29 U.S.C. § 2615(a)(2)**
*FMLA Retaliation*

101.    Plaintiff reincorporates the factual allegations in Paragraphs 1 through 39 as if fully set forth herein.

18

102. The FMLA makes it unlawful for an employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by the FMLA or for exercising rights under the FMLA. 29 U.S.C. § 2615(a)(2).

103. Plaintiff exercised her FMLA rights by taking approved medical leave following her hospitalization for cardiac tachycardia in April 2025.

104. Following Plaintiff's exercise of her FMLA rights, Defendant took adverse employment actions against Plaintiff.

105. Defendant failed to maintain Plaintiff's work during her absence. Upon Plaintiff's return, Wesley White immediately demanded that Plaintiff complete all outstanding work.

106. The stress caused Plaintiff's physician to place her back on FMLA leave.

107. After Plaintiff's second FMLA leave, Defendant continued the pattern of hostile and discriminatory treatment, including conducting a sham Director interview and hiring a less-qualified white external candidate for the position, contributing to Plaintiff's constructive discharge approximately two months after her return from FMLA leave.

108. The temporal proximity between Plaintiff's FMLA leave and the adverse actions, combined with the escalating hostility upon her return, demonstrate a causal connection between Plaintiff's exercise of FMLA rights and Defendant's adverse actions.

109. As a direct and proximate result of Defendant's unlawful retaliation, Plaintiff has suffered damages, including but not limited to lost wages, lost benefits, emotional distress, and physical harm.

19

### COUNT VIII
### Fla. Stat. § 760.10
### *FCRA Race Discrimination*

110.    Plaintiff reincorporates the factual allegations in Paragraphs 1 through 39 as if fully set forth herein.

111.    The Florida Civil Rights Act makes it an unlawful employment practice for an employer to discharge or otherwise discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment because of such individual's race. Fla. Stat. § 760.10(1)(a).

112.    As set forth in detail above, Defendant discriminated against Plaintiff on the basis of her race by denying her training, staffing authority, and advancement opportunities provided to her white counterpart; undermining her managerial authority; passing her over for promotion in favor of a less-qualified white external candidate; and forcing her constructive discharge through an accumulation of intolerable discriminatory working conditions. These acts constitute unlawful employment practices under the FCRA.

113.    As a direct and proximate result of Defendant's unlawful discrimination, Plaintiff has suffered damages, including but not limited to lost wages, lost benefits, emotional distress, mental anguish, humiliation, and loss of enjoyment of life.

### COUNT IX
### Fla. Stat. § 760.10
### *FCRA Retaliation*

114.    Plaintiff reincorporates the factual allegations in Paragraphs 1 through 39 as if fully set forth herein.

115.    The Florida Civil Rights Act makes it an unlawful employment practice for an employer to discriminate against any person because that person has opposed any practice which

20

is an unlawful employment practice under the FCRA or because that person has made a charge or participated in any manner in an investigation, proceeding, or hearing under the FCRA. Fla. Stat. § 760.10(7).

116.    Plaintiff engaged in protected activity by making multiple internal complaints of race discrimination between June 2023 and March 2025, and by filing a charge with the EEOC and the Florida Commission on Human Relations on January 13, 2026.

117.    Following Plaintiff's protected activity, Defendant escalated its discriminatory treatment, intimidated Plaintiff through senior leadership, used Plaintiff's Director interview to question her about prior complaints, hired a less-qualified white external candidate over Plaintiff, denied Plaintiff all post-resignation applications without interview, and created conditions forcing Plaintiff's constructive discharge. These acts constitute unlawful retaliation under the FCRA.

118.    As a direct and proximate result of Defendant's unlawful retaliation, Plaintiff has suffered damages, including but not limited to lost wages, lost benefits, emotional distress, mental anguish, humiliation, and loss of enjoyment of life.

## JURY DEMAND

Plaintiff hereby demands a jury trial on all issues to be tried.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests this Court enter judgment against Defendant for all damages suffered by the Plaintiff, including economic damages, lost wages (back pay and front pay) and benefits, statutory damages, compensatory damages, emotional distress damages, punitive damages, equitable relief, interest, attorney's fees and costs, disbursement of this action, injunctive relief, and any other remedies (monetary and/or equitable) allowable by law as a result of the Defendant's conduct in violation of federal and Florida law.

21

Dated:  April 20, 2026

**DEREK SMITH LAW GROUP, PLLC**
*Counsel for Plaintiff*

<u>/s/ Nicolas A. Yoda</u>
Nicolas A. Yoda, Esq.
Florida Bar No.: 1015597
Derek Smith Law Group, PLLC
520 Brickell Key Drive, Suite O-301
Miami, FL 33131
Tel: (305) 946-1884
Fax: (305) 503-6741
Nicolasy@dereksmithlaw.com

22

Case 5:26-cv-00431   Document 1-1   Filed 06/12/26   Page 28 of 40 PageID 32

IN THE CIRCUIT COURT OF THE FIFTH JUDICIAL CIRCUIT
IN AND FOR MARION COUNTY, FLORIDA

JANE DOE,

                                            CASE NO.:

        Plaintiff,

v.

ENSEMBLE RCM LLC, d/b/a
ENSEMBLE HEALTH PARTNERS,

        Defendant.

_____/

## PLAINTIFF'S MOTION FOR LEAVE TO PROCEED UNDER PSEUDONYM

Plaintiff, JANE DOE, by and through undersigned counsel, respectfully moves this Court for an Order granting Plaintiff leave to proceed in this action under the pseudonym "Jane Doe" and, in support thereof, states as follows:

## INTRODUCTION

Plaintiff filed her Complaint in this action simultaneously with this Motion. Plaintiff is a survivor of domestic violence who changed her legal name and relocated to Florida to escape her abuser. Plaintiff is a certified participant in the Florida Address Confidentiality Program ("ACP") administered by the Florida Attorney General pursuant to Florida Statutes §§ 741.401–741.465. Plaintiff's former legal name is the name under which she was employed by Defendant during the events giving rise to this lawsuit. If Plaintiff's current legal name appears on the public docket in connection with this employment discrimination action, it will link her current identity to her former identity and to her former employer's records, enabling her abuser to locate her. This Motion seeks to prevent that result.

## **LEGAL STANDARD**

Article I, Section 24 of the Florida Constitution establishes a right of access to public records and judicial proceedings. Florida Rule of Civil Procedure 1.100(c)(1) requires that a complaint state the names of all parties. Florida Rule of Judicial Administration 2.420 governs confidential information within court filings. Under Rule 2.420(c)(7), all records made confidential under Florida law are exempt from public access. Florida Statute § 741.465 expressly exempts ACP participant addresses, telephone numbers, and social security numbers from public disclosure. Rule 2.420(c)(9) further authorizes a court to make court records confidential to avoid substantial injury to a party by disclosure of matters protected by a privacy right or to comply with established public policy set forth in Florida statutes. Fla. R. Jud. Admin. 2.420(c)(9)(A)(vi)–(vii).

While no Florida statute expressly authorizes pseudonymous litigation, Florida courts have recognized a narrow exception permitting a party to proceed under a pseudonym where the party demonstrates a substantial privacy right that outweighs the presumption of openness. *See, e.g., Doe v. Malicki*, No. 01-10773-CA-22 (Fla. 11th Jud. Cir. 2002) (permitting plaintiff to proceed as Jane Doe in civil sexual abuse action after balancing privacy interests against presumption of openness). In analyzing pseudonym requests, Florida courts have adopted the multi-factor framework articulated in *Doe v. Frank*, 951 F.2d 320, 323 (11th Cir. 1992), and refined in *Plaintiff B. v. Francis*, 631 F.3d 1310, 1315–16 (11th Cir. 2011).

The factors courts consider include: (1) whether the plaintiff is challenging governmental activity; (2) whether the plaintiff would be required to disclose information of the utmost intimacy; (3) whether identification poses a risk of retaliatory physical or mental harm; (4) whether such risk is more than mere conjecture; and (5) whether the defendant would be prejudiced by the plaintiff's anonymity. Courts also consider whether the plaintiff faces threats of violence or physical harm.

2

*Francis*, 631 F.3d at 1316; *Roe, II v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 685 (11th Cir. 2001).

Critically, the Florida Legislature has enacted specific protections for domestic violence victims through the Address Confidentiality Program, Florida Statutes §§ 741.401–741.465, which provides substitute addresses and public records exemptions to prevent abusers from locating their victims through government records. This legislative policy directly supports Plaintiff's request to proceed under a pseudonym.

### MEMORANDUM

### I.    Plaintiff's Substantial Privacy Interest Outweighs the Presumption of Openness.

Plaintiff is not an ordinary litigant seeking anonymity to avoid embarrassment. Plaintiff is a documented survivor of domestic violence who has taken extraordinary legal measures to sever her identity from her abuser. She obtained a formal name change. She relocated to the State of Florida and enrolled in the Florida Address Confidentiality Program, through which the Attorney General designated a substitute mailing address for all public records purposes. Fla. Stat. § 741.405.

The ACP exists for one purpose: to prevent abusers from using public records to locate their victims. Fla. Stat. § 741.401. If Plaintiff's current legal name appears on the public docket of this employment discrimination lawsuit, it will be connected to her former name through the employment records, deposition testimony, and discovery materials that necessarily reference the name she used during her employment with Defendant. This connection would effectively nullify the protections the ACP was designed to provide and would expose Plaintiff to the very danger she has spent years escaping.

3

## II.    Application of the Pseudonym Factors.

Although Plaintiff does not challenge governmental activity, this factor is not dispositive, and courts routinely permit pseudonymous proceedings in private civil actions where other factors weigh heavily in the plaintiff's favor. *See Francis*, 631 F.3d at 1316. Here, every other factor weighs decisively in Plaintiff's favor.

This action will necessarily require the disclosure of information of the utmost intimacy. Plaintiff's status as a domestic violence survivor, her former legal name, the circumstances of her name change, and her enrollment in a state confidentiality program designed to protect victims of domestic violence will all become part of the litigation record. Courts have consistently recognized that matters touching on personal safety from domestic violence are among the most sensitive a litigant can be required to disclose.

The risk of physical harm to Plaintiff is neither speculative nor conjectural. Plaintiff is a certified ACP participant. She changed her legal name, she relocated to another state, and she enrolled in a state-administered confidentiality program. These are not the actions of a litigant seeking anonymity for convenience, but rather the documented protective measures of a person whose physical safety depends on the separation of her current identity from her former identity. If this lawsuit connects those identities through the public docket, her abuser could use court records and employment records to locate her, and every protection she has built over the past several years would be undone simultaneously.

Defendant will suffer no prejudice from Plaintiff's use of a pseudonym. Defendant employed Plaintiff for more than two years and possesses her employment records, personnel file, performance evaluations, and internal communications. Plaintiff does not seek to conceal her identity from Defendant or this Court. She seeks only to prevent her current legal name from

appearing on the public docket, where it could be discovered by her abuser. Plaintiff's true identity will be disclosed to Defendant's counsel pursuant to a protective order, and Defendant will retain full ability to investigate, prepare, and defend this action.

**III.    The ACP Independently Supports Pseudonymous Proceedings.**

Florida's ACP provides that state and local agencies shall accept the substitute address designated by the Attorney General as a program participant's address when creating public records. Fla. Stat. § 741.405(1). The program's public records exemption further provides that the addresses, telephone numbers, and social security numbers of ACP participants held by the Attorney General are exempt from public records disclosure. Fla. Stat. § 741.465(1). Under Rule 2.420(c)(7), information made confidential by Florida Statute § 741.465 must be maintained as confidential in court records.

Permitting Plaintiff to proceed under a pseudonym is consistent with the legislative purpose of the ACP and the judicial administration rules governing confidential information in court records. Requiring Plaintiff to use her real name on the public docket would directly undermine the protections the Legislature intended the ACP to provide.

**IV.    Proposed Safeguards**

To balance the presumption of openness with Plaintiff's safety, Plaintiff proposes the following safeguards:

1. Plaintiff will proceed under the pseudonym "Jane Doe" in all public filings.

2. Plaintiff's true identity (current and former legal names) will be disclosed to the Court in camera and to Defendant's counsel pursuant to a protective order.

3. All parties and counsel will refer to Plaintiff by pseudonym in all publicly filed documents.

4.  Any document that necessarily references Plaintiff's current or former legal name will be filed under seal.

5.  Discovery materials containing Plaintiff's current or former legal name will be subject to a confidentiality designation under Florida Rule of Civil Procedure 1.280(c).

6.  Depositions referencing Plaintiff's current or former legal name will be designated as confidential.

These safeguards protect Plaintiff's safety while preserving Defendant's ability to fully litigate this case and the Court's ability to adjudicate the claims on the merits.

**WHEREFORE**, Plaintiff, JANE DOE, requests that this Court enter an Order granting Plaintiff leave to proceed in this action under the pseudonym "Jane Doe" and directing that Plaintiff's current and former legal names not appear on the public docket.

> **DEREK SMITH LAW GROUP, PLLC**
> *Counsel for Plaintiff*
>
> /s/ Nicolás A. Yoda
> Nicolás A. Yoda, Esq.
> Florida Bar No. 1015597
> Derek Smith Law Group, PLLC
> 520 Brickell Key Drive, Suite O-301
> Miami, FL 33131
> Tel: (305) 946-1884
> Fax: (305) 503-6741
> nicolasy@dereksmithlaw.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 20th day of April, 2026, I filed the instant motion utilizing the Florida Courts E-Filing Portal. A copy of the instant motion will be served with Complaint filed simultaneously with the instant motion.

> /s/ Nicolás A. Yoda
> Nicolás A. Yoda, Esq.

6

Filing # 246432261 E-Filed 04/20/2026 07:17:13 PM

IN THE CIRCUIT COURT OF THE FIFTH JUDICIAL CIRCUIT
IN AND FOR MARION COUNTY, FLORIDA

JANE DOE,

                                           CASE NO.:

      Plaintiff,

v.

ENSEMBLE RCM LLC, d/b/a
ENSEMBLE HEALTH PARTNERS,

      Defendant.

_____/

**NOTICE OF CONFIDENTIAL INFORMATION WITHIN COURT FILING**

Pursuant to Florida Rule of General Practice and Judicial Administration 2.420(d)(2), I hereby certify I am filing herewith a document containing confidential information as described in Rule 2.420(d)(1)(B) and that:

(a) The title/type of documents are the Complaint and Motion for Leave to Proceed Under Pseudonym, and

(b)    ( x ) the entire documents are confidential, or

        ( ) the confidential information within the document is precisely located at

_____.

Dated: April 20, 2026.

                              **DEREK SMITH LAW GROUP, PLLC**
                              /s/ Nicolas A. Yoda
                              Nicolas A. Yoda, Esq.
                              Florida Bar No. 1015597
                              Derek Smith Law Group, PLLC
                              520 Brickell Key Drive, Suite O-301
                              Miami, FL 33131
                              Tel: (305) 946-1884
                              Fax: (305) 503-6741
                              nicolasy@dereksmithlaw.com

Filing # 246610494 E-Filed 04/22/2026 03:40:15 PM

## IN THE CIRCUIT COURT OF THE FIFTH JUDICIAL CIRCUIT
## IN AND FOR MARION COUNTY, FLORIDA

**CASE NUMBER: 42-2026-CA-000918-CAAM**

JANE DOE,
    Plaintiff,

-vs-

ENSEMBLE RCM LLC, d/b/a
ENSEMBLE HEALTH PARTNERS,
    Defendants.

_____

## DIFFERENTIATED CIVIL CASE MANAGEMENT ORDER
## AND
## ORDER ESTABLISHING MOTION PRACTICE PROCEDURES
**(NOTICE: IT IS THE PLAINTIFF'S RESPONSIBILITY TO SERVE THIS ORDER TO EACH DEFENDANT, OBTAIN PROOF OF SERVICE AND FILE PROOF OF SERVICE INTO THE COURT FILE)**

THIS MATTER having come before the Court for review of the above-styled civil case by the presiding judge, it is therefore **ORDERED** as follows:

1. The above-styled action is designated as a [  ] **Streamlined** [X] **General** case.

2. The following deadlines shall be observed:

| Events | Streamlined Case Completion Periods | General Case Completion Periods |
|---|---|---|
| Service of Complaints | Within 120 days of filing of the complaint | Within 120 days of filing of the complaint |
| Service under Extensions | If extension for service granted, then within 240 days from the date of filing of complaint | If extension for service granted, then within 240 days from the date of filing of complaint |

Electronically Filed Marion County Case # 26CA000918AX 04/22/2026 03:40:15 PM

| | | |
|---|---|---|
| Addition of new parties | If extension for service granted, then within 240 days from the date of filing complaint | If extension for service granted, then within 240 days from the date of filing complaint |
| Completion of Fact and Expert Discovery | Within 270 days after the complaint is filed | Within 450 days after the complaint is filed |
| Objection to Case Differentiation | Within 30 days | Within 30 days |
| Filing and Service of Motions for Summary Judgment | Filing shall be any time after the expiration of 20 days from the commencement of the action Service at least 40 days before the time fixed for the hearing | Filing shall be any time after the expiration of 20 days from the commencement of the action Service at least 40 days before the time fixed for the hearing |
| Filing and Resolution of All Objections to pleadings | Within 45 days of filing | Within 45 days of filing |
| Filing and Resolution of all pre-trial motions | Prior to pre-trial conference | Prior to pre-trial conference |
| Completion of Alternative Dispute Resolution | Within 270 days after the complaint is filed | Within 450 days after the complaint is filed |
| Trial | 12 Months | 18 months |

3. The deadlines established in this case management order, including actual and projected trial periods, shall be strictly enforced by the Court *unless changed by court order* pursuant to Florida Rules of Civil Procedure 1.200(e).

4. Parties may submit an agreed order to extend a deadline if the extension does not affect the ability to comply with the remaining dates in this Case Management Order. If extending an individual case management deadline may affect a subsequent deadline in this Order, parties must seek an amendment of the Order, rather than submitting a motion for extension of an individual deadline. Procrastination in completing discovery or the unavailability of counsel will not constitute good cause for a change to these deadlines. Failure to comply with deadlines may subject the parties to sanctions, including but not limited to, striking of discovery, witnesses, evidence, pleadings, imposition of attorney fees, and/or dismissal.

5. Warning as to Generative Artificial Intelligence:

a. An attorney may ethically utilize Generative Artificial Intelligence technologies but only to the extent that the lawyer can reasonably guarantee compliance with the lawyer's ethical obligations. *See* Florida Bar Ethics Opinion 24-1 (Jan. 19, 2024).

- Attorneys must comply with the Rules Regulating the Florida Bar, including but not limited to: Rule 4-1.1 Competency, Rule 4-1.6 Confidentiality, Rule 4-5.1 Supervision, and Rule 4-5.3 Supervision of non-lawyers.

- Attorneys remain responsible for all their work product.

- **IF ANY GENERATIVE ARTIFICIAL INTELLIGENCE TECHNOLOGY IS USED IN PRODUCING A PLEADING OR MOTION IT MUST BE NOTED ON THE FACE OF THE PLEADING OR MOTION.**

b. Pro-Se Litigants (self-represented parties): If you choose to use programs that rely on Generative Artificial Intelligence (AI) to prepare any document that is submitted to the Court, it should be checked carefully before filing with the Clerk. Generative AI based programs are not a substitute for competent legal counsel. While they may be useful, there is a risk that they may produce inaccurate arguments, false citations, or bad advice. A self represented litigant has the duty to check the accuracy of anything they submit to the Court.

**It is FURTHER ORDERED** that to facilitate an orderly progression of this matter and better-informed decisions by the Court, all motions shall be filed with the Clerk of the Court pursuant to Rule 1.080(e), Fla. R. Civ. P., and handled in the following manner:

6. *Legal memorandum required.* In making any written motion or other application to the Court for the entry of an order of any kind, the moving party shall file and serve with such motion or application a legal memorandum with citations to authority in support of the relief requested. A supporting memorandum may be incorporated into the body of the motion but should be clearly titled, "Motion to/for------------and Memorandum of Law."

The following motions need not be accompanied by a memorandum of law:

a. motion for continuance;

b. motion for default addressed to the Court;

c. motion for confirmation of sale;

d. motion to withdraw or substitute exhibits;

e. motion to proceed *informa pauperis*;

f. motion for extension of time in which to complete discovery, provided good cause is set forth in the motion; and

g. motion to withdraw or substitute counsel.

7. *Timely opposing memoranda.* Each party opposing any written motion or other application shall file and serve, within twenty (20) days after being served with such motion or application, a legal memorandum with citations to authority in opposition to the relief requested. Failure to respond within the time allowed may be deemed sufficient cause for granting the motion by default or for the Court to construe that there is no objection to the motion. *If a party has no objection to a motion and does not intend to file a responsive memorandum, counsel should file a written notice with the Clerk of the Court so indicating.*

8. *Replies.* If upon receipt of an opposing memorandum, counsel determines further argument of his client's position is required, counsel shall file a reply within five (5) days of the receipt of

opposing memorandum.

9. *Discovery motions accompanied by good faith certification.* Before filing a motion to compel pursuant to Rule 1.380, Fla. R. Civ. P., or a motion for protective order pursuant to Rule 1.280(c), counsel shall confer and correspond with counsel for the opposing party in a good faith effort to resolve by agreement the issues raised, and shall certify to the Court at the time of filing the motion that s/he has conferred with opposing counsel and has been unable to resolve the dispute and **shall** attach to the motion a copy of the correspondence with opposing counsel of the good faith effort to resolve the discovery dispute. The failure to comply with this paragraph may result in the Court entering an order striking, without prejudice, the discovery motion.

10. *Content of discovery motions.* Except for motions grounded upon a complete failure to respond to discovery, discovery motions shall: (1) quote in full each interrogatory, question on deposition, request for admission, or request for production to which the motion is addressed; (2) quote in full the objection and grounds given therefore; and (3) state (with citations to authority) the reasons such objection should be overruled or sustained. If there is an allegation in the motion to compel of a complete failure to respond or object to discovery and there has been no request for an extension of time, then the Court may enter an *ex parte* order compelling discovery. See, **Waters v. American General Corporation**, 770 So. 2d 1275 (Fla. 4th DCA 2000).

11. *Oral argument.* Motions and other applications will ordinarily be determined by the Court on the basis of motion papers and legal memoranda unless a hearing is required by rule or law. (For example, under Rule 1.510, *Fla. R. Civ. P.*, **summary judgment motions must be set for hearing.** This would not, however, extinguish the requirement that the motion be accompanied by and responded to with memoranda taking into consideration the time frame under Rule 1.510, *Fla. R. Civ. P.,* for filing supporting and opposing affidavits, etc.)

 The Court may permit oral argument upon the written request of any interested party or upon the Court's own motion. Requests for oral argument must accompany the motion or opposing legal memorandum and must estimate the time required for argument. When a request for hearing is granted, counsel for the requesting party will be asked to coordinate the calendars of the Court and counsel. The Court, on its own, may schedule the hearing.

12. *Page limitation.* Absent prior permission of the Court, no party shall file a legal memorandum in excess of fifteen (15) pages in length.

13. *Motions to be filed with the Clerk.* All original pleadings and papers shall be filed with the Clerk of the Court.

14. *Form of motions.* All applications to the Court requesting relief in any form, or citing authorities or presenting argument with respect to any matter awaiting decision, shall be made in writing in accordance with this order and in appropriate form pursuant to the *Florida Rules of Civil Procedure*, and unless invited or directed by the Court, should not be addressed or presented to the Court in the form of a letter or the like.

15. *Time calculations.* All time calculations herein shall be subject to Rule 1.090, *Fla. R. Civ. P.*

16. *In limine motions.* Unless oral argument is requested and granted, or otherwise ordered by the Court, in limine motions will be resolved without a hearing. All motions in limine must be filed no later than 15 days before the start of the trial term or the Court may deny the motion as being untimely.

17. *Emergency motions.* Motions of an emergency nature may be considered and determined by the Court at any time in its discretion.

18. *Proposed Orders.* Each party shall submit a proposed order to the Court.

FAILURE OF EITHER PARTY TO COMPLY WITH THE TERMS OF THIS ORDER MAY

RESULT IN THE STRIKING/DENIAL OF THE MOTION(S) OR PARTS OF THEM, OR STAYING FURTHER PROCEEDINGS UNTIL THIS ORDER IS COMPLIED WITH, OR DISMISSAL/DEFAULT JUDGMENT BEING ENTERED AGAINST THE NONCOMPLIANT PARTY.

**DONE AND ORDERED** on this Wednesday, April 22, 2026 in Ocala, FL .

42-2026-CA-000918-CAAM 04/22/2026 02:38:50 PM

Stacy Youmans, Circuit Judge
42-2026-CA-000918-CAAM 04/22/2026 02:38:50 PM

UNOFFICIAL DOCUMENT

Copy to:


NICOLAS ABDEL YODA
nicolasy@dereksmithlaw.com
david@dereksmithlaw.com

